171815 Deutsche Bank Nat'l Trust Co. v. Pike 171936 Deutsche Bank Nat'l Trust Co. v. Pike Kevin Polanski, on behalf of the Deutsche Bank The District Court committed a reversible error in finding that under New Hampshire law, fraud is a conditioned precedent to the application of equitable subrogation. As the New Hampshire Supreme Court outlined in the Chase case, there are four elements to equitable subrogation. First, the subrogate need not act as a volunteer. Second, the subrogate need not have paid a debt that is not primarily liable. Third, the subrogate must have paid the entire debt. And fourth, subrogation may not work an injustice to the rights of others. Those are the four elements, none of which involve fraud. In the application of the Chase case, the Court simply looked at fraud as the implication of the Supreme Court's equitable powers to determine that it had the equitable powers to provide the relief that it provided under equitable subrogation. What's interesting about this case is that these claims passed the Rule 12b hurdles, Rule 56 hurdles. In the cross motions for summary judgment on these specific issues, both parties addressed that there are four elements to equitable subrogation. Neither party challenged the Court's equitable powers with respect to whether it may apply equitable subrogation to the claims at issue. In fact, in denying the cross motions for summary judgment, the Court stated that there were two issues of material fact. One, whether Deutsche Bank's predecessor in interest paid in full the new century mortgage. And two, whether Ms. Pike actually signed or executed the new century mortgage in holding that she had waived the homestead right. In the same order or decision, the Court said all that's left is equitable considerations to be cited at trial. It wasn't until the Court ordered the parties to prepare and file trial briefs that the appellee raised for the first time this condition precedent of fraud. And despite Deutsche Bank's objection, the Court sous-spante, issued a ruling dismissing... What do you mean sous-spante? I mean, the Court sous-spante suggests that without any notice to the parties, on its own initiative, the Court did something. The Court goes all this way to describe all of the briefing that was invited on this issue, and even offered an opportunity to reconsider in light of additional briefing. You make it sound like the Court went off on a walk of its own, introduced an issue into the case, and then decided it without giving you a chance to respond. That's just not a fair account of the record. At the point that it issued its initial decision to dismissal, there was no notice. There was no opportunity to be heard. It was only after my request at a pretrial conference that I said, I'd like to debrief this issue further. Now, as we know under the motion to reconsider standards, there's got to be a manifest error of law or fact, which is already putting us in injustice. The sous-spante dismissal, as we look at the Berkovitz case, my client should be entitled to some sort of benefit. Under Rule 56 standard, the fact shown in the light most favorable to the non-moving party. Here, there is no standard applied. It was a dismissal after an inadequate opportunity to be heard on that decision. Notwithstanding, it was an inappropriate or incorrect application of the law. There is no condition of precedent. The Court, in its own decision, stated that it has echo powers, but that it was constrained by the state law's holding that there must be some showing of fraud, which is just incorrect. Even in its marginal reference to fraud in its trial brief, Ms. Pike relies upon the D'Eso case. D'Eso had nothing to do with equitable subrogation. D'Eso was relating to an unsecured creditor. In the case case that was important to the Court, fraud was involved, was it not? Fraud was involved. In fact, it was central to the outcome of that case, was it not? It was central to the indication of the Court's equitable powers. I mean, in the Court, the New Hampshire Supreme Court looked at fraud to see whether, under 498, Section 1, it had the power to issue the relief necessary under equitable subrogation. So the District Court looks at what New Hampshire law there is. There's not a lot of it. It's sitting in diversity. It sees a case involving equitable subrogation where the issue of fraud was central to it and says, as a court sitting in diversity, I should not be expanding New Hampshire law beyond where it currently stands. So it makes the judgment that I just don't think I should be doing that. But that's exactly what the District Court should be doing when it's asked to apply state law sitting in diversity. That's exactly it, but it did expand New Hampshire law. It expanded by stating that it was a conditioned precedent, that fraud was a conditioned precedent to the application of that doctrine. So it did expand New Hampshire law in that respect. And I understand there is not a lot of case law. And I don't think DASO is particularly helpful here. In Chase, they looked at the fraud and the inducement, but only with respect to whether the Superior Court had equitable powers to issue the type of relief it did issue in that case. And I believe that the District Court did expand the New Hampshire substance law by stating that fraud was a conditioned precedent. It hadn't been raised at any point up until the trial brief, and in marginal reference at that. Moving on to the other errors that we asserted in our brief, the District Court also earned findings as a matter of law that Pike's homestead right was superior to Deutsche Bank's mortgage. For two particular reasons. The first is that in order to have a homestead right, you must maintain occupancy or be the owner or the spouse of the owner. Now, central to this case is the divorce decree, the divorce decree which is dated July 3, 2013. At that time, there's no dispute that Mr. Pike owned the property. Ms. Pike did not own it by joint tenancy or otherwise. And the District Court held that the grant of the property interest in the divorce decree was enough to have her maintain her homestead right. But there's no case law that supports that position. There's no case law that supports that a divorce decree may be a conveyance of real estate. Well, the District Court acknowledges that there is no case law, so it's put in a position of having to predict how the New Hampshire Supreme Court would resolve this question. Yes, Your Honor. And so it says, going into the divorce proceeding, she had a homestead interest. The question is, what does the divorce decree do to that homestead interest? It then talks about the protective purpose of the homestead exemption. And it looks at the terms of the divorce decree, which makes clear that she is to have an ownership interest in that property, free and clear of any interest of her husband's. It looks at the fact that he is obligated, within a certain period of time, to transfer the property to her. So looking at all of that, the Court says, well, I'm not going to expose her to the possibility that some other interest can come in and trump her homestead interest. And so he says, I believe the New Hampshire Supreme Court would say, at the time of the divorce decree, she continued to have that homestead interest. Well, it's a predictive judgment. What's wrong with it? Because the divorce decree isn't a self-executing document. It's not a conveyance of real estate. And the cases that have looked at that decision have dealt with joint tenancies. And in each of those cases, a separate instrument conveying the property was not necessary. Here, a separate instrument was necessary. And as Your Honor correctly alludes, there was an additional step. They did have to assign an additional document and execute. Because in looking at the totality of the circumstances, the Court was aware she did not have an ownership interest in the property as of July 3rd. So an additional step, signing that instrument, conveying the document to Ms. Pike was necessary. And as a non-self-executing document, without that additional step, she didn't have an ownership interest. And I would rely on it. And the cases that Ms. Pike relies upon are an opposite. I mean, they deal with devising a joint interest. And in each of those cases, just like a joint tenancy with the right of survivorship, when somebody dies, you don't need another separate interest conveying that interest to the spouse. Here, you do. There is a separate instrument that is necessary. But more particularly, that's incorrect, is that that wasn't the only part of that issue that the District Court got wrong. They also didn't look at the totality in the party's intent with respect to the divorce decree. The divorce decree was specific to say that Ms. Pike's interest is only good until foreclosure. That decision, that interest and that provision was not even analyzed in the decision. So does that mean that Ms. Pike takes the interest subject to the mortgage? Well, the divorce decree, I think, also considered the possibility that there might not even be a foreclosure. And then if she has to sell the property, she has to share the proceeds with her former husband. Absolutely, Your Honor. But that would make the language in the divorce decree superfluous. Why include the language foreclosure? Because if there is a foreclosure and the mortgagee does foreclose and they seek to evict her by an injectment action, they wouldn't have the issue of paying a homestead. But why put that language in there? If you look at the in-race... Are you suggesting that you talk about the intent of the parties in the divorce decree? Is it your position there are disputed issues of fact that should be subject to trial? Yes, Your Honor. And in our pretrial memo, we identified that we would be calling Ms. Pike on that issue and we would be calling Mr. Pike, who I don't know if it's in the record or not, but it is in the Philippines, we would be calling his divorce attorney with respect to the negotiations and the intent of the parties. There was also evidence in the record that the application, the financial application that Ms. Pike signed with respect to the divorce decree made her well aware that the mortgage was in default at that time. In fact, it had been default for several years. And so it was an issue of fact. What other factual issues would you address if there were a trial? Specifically, the intent of the parties with respect to whether she was taken subject to the mortgage, the application that she was aware that the mortgage was in default. I would suggest that the attorney for Mr. Pike would testify that they were well aware. The reason he gave the property to her until foreclosure is because he knew foreclosure was imminent. And I expect that he would testify to that as part of the negotiations. And that's why he was identified as a witness on our pretrial memo. And that was one of the factors to be considered at trial. So there was issues of fact that we didn't have a chance to get to. And so that issue wasn't even addressed in the court's order. The court simply stated that the divorce decree in and of itself is enough to convey a property interest to maintain the homestead. It did not address whatsoever the intent of the parties with respect to that language subject to foreclosure. That doesn't appear in there. And the courts had a responsibility to provide a decision or subject to what the party's intent was given the totality of the circumstances. So if she was aware that foreclosure was imminent, why would that affect the district court's determination that nevertheless at the time of the divorce decree entered, she retained her homestead interest? Why would that finding foreclosure render that decision wrong legally? If she knew that foreclosure was imminent and that she was taken subject to the mortgage, it would show that Deutsche Bank has a priority over her homestead. If she agreed as part of the divorce decree that she was taken subject to the Deutsche Bank mortgage, that Deutsche Bank mortgage has priority over her homestead. That was never decided. So in effect that would be a kind of waiver? That would constitute a waiver of her homestead interest? Is that what you're arguing? I believe it would be. And it was an issue of fact to be decided by the lower court. Thank you, Your Honors. Mr. Martin, good morning. Good morning, Your Honors. May it please the Court, I am Attorney Steven Martin, and I represent the Appellee Cross Appellant Jennifer Pike. The heart of this case is the most important real property right, the homestead right, the right of a debtor and her family to be secure in their home. There are three fundamental rules that we need to keep in mind. First, the homestead right must be construed liberally in favor of the debtor, and there is a strong presumption against waiver, so any waiver must be explicit, and equity may not be used to reach beyond the statutory homestead exceptions, absent fraud or some other egregious similar conduct. With these rules in mind, the District Court did not err when it denied Deutsch's claims and granted Ms. Pike's. Furthermore, the District Court did not err by resolving the parties' claims by applying the undisputed facts in this case to the law, resolving the matter on parties' briefing rather than through a bench trial. The District Court did err, however, by failing to award fees pursuant to RSA 1361C. Counsel, when you say there are no disputed facts, are you talking about the equitable subrogation claim, or are you also talking about the, I guess it's count, equitable subrogation is count two, is that correct? Yes, that's my request. So count one goes to the issue of whether the divorce decree had the effect of terminating her homestead interest so that she was then subject to the priority of the bank's mortgage. Your opponent is saying on that issue there are all the disputed facts that he just described. Do you disagree with that? I do, Your Honor. I disagree that there are disputed facts with respect to either count, including Ms. Pike's counterclaim, with respect to the priority issue and the divorce. Divorce decrees, when interpreted by a court, must be interpreted based on the plain language of the decree. There is no reason in this case to get into the party's intent with respect to the decree because the plain language is clear on its face. There are three reasons for that in this case. One, with respect to the plain language of the decree, the primary purpose of a divorce decree is to separate marital property. Furthermore, there's a strong, as I said earlier, strong presumption against homestead waiver. In this case, based on the plain language, the family division, that's all it did, was separate the property between the parties in that case. It gave Ms. Pike, unequivocally, the marital homestead right free and clear of Mr. Pike. At that moment in time, pursuant to long-standing New Hampshire law... Excuse me, but the decree does acknowledge specifically the possibility of foreclosure. It refers to it, right? It does, and that doesn't make a difference in this case. The reason for that is because the homestead right doesn't guarantee you a house. What it guarantees you is protection against creditors who are trying to breach the equity of your house or, in this case, foreclose on your house when it doesn't have priority over your rights. So in this case, merely because there was a language of foreclosure in there doesn't change a thing. There's nothing in the decree that says she waived her right, pursuant to the homestead statute, to file for a set-off if the house was foreclosed to obtain her homestead money that way. There's also nothing in the decree that states she was waiving her right to challenge a foreclosure. In fact, this case has a history in which shortly after the divorce was entered and a foreclosure was commenced, she, in fact, did go to the Superior Court to get an injunction against foreclosure. So the mention of foreclosure in the decree has no effect on the homestead right. A, it's not an explicit waiver, and B, there's nothing in there about not preserving her right to apply for a set-off. Not only does long-standing New Hampshire law state that divorce decrees are effective immediately upon being signed by the judge and also that property awards are transferred immediately by the divorce decree, but the rule that the... Excuse me, if that law is so clear, why did the district court say that there was no law that spoke to this issue and he had to make this predictive judgment? He couldn't find any law that settled this issue. There was no law specific to the homestead issue that was present in this case, but there is law dating back to the 19th century that says once a divorce decree issues and separates the property, the property is awarded to each party at the time the decree issues. And that includes everything from real estate to stocks to vehicles. And real estate, stock transfers, and vehicles would, under normal conditions, require somebody to sign title over to the other person. And the court, the New Hampshire Supreme Court, has consistently, again, since the 19th century, said we consider that a condition precedent, the signing of documents, we consider that a condition precedent, and we disfavor conditions precedent. So in your boilerplate language in this decree that told Mr. Pike to execute a quick claim deed within 30 days... Conveyance was memorialized in that way. It wouldn't matter if she would still be the owner of the home, even in the absence of that subsequent transaction? That's correct, yes. The remedy in that case, of course, she would have the right to file a contempt motion in the family division to make him sign over the quick claim deed. But yes, based on that principle, that property transfers are effective immediately, even those requiring transfer of title, she would still have possession of that property or title to that property. The rule that the district court applied in this case is not any different than any of the cases from other states that I cited in my brief or that the district court cited in its order. And that is that when a divorce occurs, the homestead right remains intact unless there is explicit language saying that it's not. That is the consistent rule both in this state and in other states that have considered this issue. With respect to equitable subrogation, the rule is that equity... in the Chase v. Ameriquest case and the DeAso case, equity may only apply to avoid or reach beyond the statutory exceptions of the homestead right if fraud or some other egregious conduct exists with respect to the loan that's at issue. If you cannot make that showing, then you cannot get to the elements of the specific equitable issue at hand. In this case, the district court found that there was no fraud. Based on the undisputed facts, there was no fraud involved with procuring the first Franklin loan, which Deutsche now owns. Therefore, the district court correctly found that it could not then apply the elements of equitable subrogation. That squares with New Hampshire's strong presumption favoring the homestead right and the New Hampshire rule requiring that the homestead right be liberally construed in the debtor's favor. In fact, that rule also squares with both Chase and DeAso, which both pointed out that there needs to be a balancing between applying equity and the homestead right because the homestead right is so important to protecting debtors and their families from creditors. Now, having said that, the district court in this case was only applying New Hampshire's substantive law on the matter. It was not limiting its own equity jurisdiction or equity powers. It acknowledged that... Well, it certainly used language that suggested it was doing that. I don't have the authority... It's language it used. I don't have the authority to do what the bankers did. What the bank is asking you to do. And in applying New Hampshire's substantive law on the issue of applying equity to the homestead right, it didn't have that authority, but it didn't limit its ability to consider whether to provide an equitable remedy to Deutsche or to Ms. Pike. In fact, they both asked for equitable remedies, and the court certainly had jurisdiction to do that. But in order... But equitable subrogation, being a New Hampshire common law claim, the court was required to determine whether or not it could use that equitable principle to go beyond the exception to the homestead right, which is available to Ms. Pike by New Hampshire statute. The court, in this case, though, erred when it denied Ms. Pike's request for attorney's fees. RSA 361C applies to contracts that are against a consumer that include an attorney's fees provision therein. Ms. Pike here was the prevailing party in this case. Because Deutsche's claims were dismissed, and she obtained a declaratory judgment stating that her homestead interest took priority over Deutsche's mortgage. Therefore, the plain language of RSA 361C, which allows a debtor, in this case, Ms. Pike, because her property was secured by Deutsche's mortgage, to recover her fees. And Deutsche, in this case, was the creditor, as intended by RSA 361C. And again, because she prevailed, because she received a declaratory judgment in her favor, and Deutsche's requests for declaratory judgment were denied, RSA 361C requires that she recover her fees pursuant to the mortgage that Deutsche attempted to enforce against her. Now, with respect to her attorney's fees claims, a claim, Deutsche has argued that she... Counsel, there's sort of a, seems like an odd inconsistency in your argument in a sense. I mean, she has emphasized that she never signed that mortgage. She was not a party to the mortgage. And so, for part of your position, you want to distance her from that mortgage. And now, for purposes of collecting the attorney's fees, you're invoking that very same mortgage and its language to try to justify the attorney's fees. Isn't there an inconsistency in your position? Is it one distancing her from the mortgage and now actually embracing it for the purpose of attorney's fees? No, there's no inconsistency as we see it. And the reason is, is you can be a debtor for different purposes. Now, for purposes of owing money under the loan that's tied to the mortgage, she's certainly not a debtor because she's not a signatory. But for purposes of the fact that she owns the real estate and Deutsche's mortgage is considered a lien on that real estate, she's a debtor for that purpose. And that's defined both by Black's Law Dictionary and the UCC. So from that perspective, she's a debtor. Because the mortgage is being enforced against her, pursuant to RSA 361c, because she fits the definition of debtor, she is entitled to take advantage of the attorney's fees provision there. For the same reason that even though she's not a party to the mortgage, Deutsche can enforce the mortgage against her by, in this case, seeking a declaratory judgment or foreclosing on the property. Now, Deutsche has raised the argument that she's waived her right to ask for attorney's fees because she didn't raise it at the outset of the pleadings, and that she raised it after judgment entered, or at least late in the proceedings. But attorney's fees, in this case, are not special damages. So there's no requirement to plead them at the outset of the litigation. Attorney's fees, allowed by statute or through an explicit provision of a contract,  Well, the district court specifically after issuing its rulings explicitly said, now you can seek attorney's fees without deciding whether your client was entitled to attorney's fees, but then invited a motion seeking attorney's fees. Isn't that correct? That is correct. And she filed her motion after the court more or less instructed her to file an appropriate motion to do so. And finally, with respect to the attorney's fees, there was also an argument that the New Hampshire Supreme Court had already determined that Ms. Pike was not a debtor for all intents and purposes. Again, as I explained before, you can be a debtor for different reasons, and the New Hampshire Supreme Court only considered whether she was a debtor for purposes of being a borrower under the loan, which it determined she wasn't. However, I will say, notably, the New Hampshire Supreme Court, in the prior case, did frame her as being a debtor in the way that I have argued that she is a debtor, that she is the owner of the property subject to a lien. And unless the court has further questions, that will conclude my argument. Thank you. Your Honor, I'll just write briefly on the issue of the attorney's fees. Ms. Pike has gone to great lengths to distance herself from saying that she's either a borrower or a debtor. And now to seek just the benefit of the attorney's fees, she claims that she's one or the other. And the district court properly denied that motion. In addition, this is not an enforcement action of the mortgage, and for that additional reason, the motion or the appeal for that reason should be denied. Thank you. Thank you.